**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LATHFIELD INVESTMENTS, LLC,
LATHFIELD HOLDINGS, LLC, and
LATHFILED PARTNERS, LLC,

        Plaintiffs,                Case No. 21-cv-10193
                                      HON. BERNARD A. FRIEDMAN

vs.

CITY OF LATHRUP VILLAGE,
LATHRUP VILLAGE DOWNTOWN
DEVELOPMENT AUTHORITY,
JIM WRIGHT, and
MCKENNA & ASSOCIATES, INC.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING THE MOTION FOR SUMMARY**
**JUDGMENT FILED BY DEFENDANTS LATHRUP VILLAGE AND THE**
**DDA (ECF NO. 40) AND GRANTING IN PART AND DENYING IN PART**
**THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS**
**WRIGHT AND MCKENNA (ECF NO. 42)**

This matter is before the Court on a motion for summary judgment filed by

defendants City of Lathrup Village ("Lathrup," "Lathrup Village," or "the City")

and Lathrup Village Downtown Development Authority ("DDA"), (ECF No. 40),

as well as a motion for summary judgment filed by defendants Jim Wright and

McKenna & Associates ("McKenna"), (ECF No. 42).  Plaintiffs Lathfield Partners,

LLC; Lathfield Holdings, LLC; and  Lathfield Investments, LLC (collectively

"Lathfield" or "plaintiffs") have filed responses to the motions, (ECF Nos. 44, 45), and defendants have filed replies, (ECF Nos. 46, 49). The Court does not believe oral argument will aid in the resolution of this matter and will not hold a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion filed by the City and the DDA is granted; the motion filed by Wright and McKenna is granted in part and denied in part.

I.   Background

In January 2021, each of the three plaintiffs filed a separate lawsuit in Oakland County Circuit Court against defendants Lathrup Village, DDA, Wright, and McKenna. All three cases were removed to the United States District Court for the Eastern District of Michigan and were ultimately consolidated. (ECF No. 10) (Order consolidating cases 21-cv-10193, 21-cv-10195, and 21-cv-10198).

The factual allegations and claims are very similar (frequently identical) across the three complaints and any differences are largely irrelevant to resolution of these motions. *See* (21-cv-10193, ECF No. 1); (21-cv-10195, ECF No. 1); (21-cv-10198, ECF No. 5) (Amended Complaint). For ease of reference, the Court will refer to the allegations in the complaint filed in 21-cv-10193 unless otherwise noted.

Lathfield alleges that in January 2020 it purchased from Dahl Real Estate, LLC certain real property, situated on Southfield Road in Lathrup Village, which is

2

located in the City's Mixed-Use Zoning District (the "Property").  (21-cv-10193, ECF No. 1, PageID.7-8).  The complaint alleges that for at least a decade the City has licensed uses at the Property that are permitted under that zoning designation and that plaintiffs have no plan to change the use of the Property.  (*Id.*, PageID.8).  Lathfield further contends that under Article 6 of the City's zoning code, "site plan review" only applies to development or if there is a proposed change of use.  (*Id.*).

Nevertheless, the complaint alleges that after Lathfield bought the Property the City represented that site plan approval was required.  (*Id.*, PageID.9).  Lathfield urges that the City "demanded that an inspection of the Property be permitted" and that Lathfield, "unaware of Lathrup's zoning code at the time and fearful of Lathrup's threats of government action, was compelled against its will to permit an inspection of the property."  (*Id.*).  The complaint suggests that inspections were conducted on the Property in July of 2020 by the City and defendant Jim Wright,[1] following which an inspection report was issued "purporting to claim that [Lathfield] must conduct certain repairs to the Property."  (*Id.*, PageID.9).  Plaintiffs assert that the inspection report relied upon 2014, 2015, and 2017 versions of the building and trade codes, but that "[t]he codes adopted by Lathrup . . . are limited to the 2006 versions of the various . . . codes."  (*Id.*, PageID.9-10).  The complaint urges that plaintiffs attempted to appeal the

[1] The complaint alleges that Wright is an employee of defendant McKenna and that McKenna is employed by the City as an independent contractor.  (*Id.*, PageID.7).

3

conclusions of the inspection but were told that the inspection report was not appealable because no violations had been issued. (*Id.*, PageID.10, n.1).

Lathfield also alleges that based on this "improper [i]nspection," Jim Wright told Lathfield's licensees, prospective licensees, contractors, and tradesmen that the Property was being condemned and thus that they should not seek permits to work on the Property. (*Id.*, PageID.10). The complaint asserts that so far, however, the City "has taken no action to condemn the Property." (*Id.*).

Lathfield states that in September 2020, the City issued a Site Plan Review to Lathfield indicating that the Property "was likely approved as an office building" and acknowledging that Lathfield "intends to maintain the mixture of uses operating in the building, and that no additional space is proposed to be added." (*Id.*) (internal quotation marks omitted). According to plaintiffs, this Site Plan Review confirms that there has been no change of use at the Property and, thus, that "there is no mechanism" by which the City can compel Lathfield to comply with the Site Plan Review. (*Id.*, PageID.11).

Plaintiffs assert that the City "realized that [it had] no enforcement mechanism under its zoning code," so it instead "threaten[ed] [Lathfield] with prosecution for not having obtained a business license." (*Id.*). Lathfield contends that under the city's code it was not required to obtain a business license, but says that it submitted an application anyways, which was denied. (*Id.*). The complaint

4

further alleges that the City "threatened to withhold the business license applications of [Lathfield's] commercial licensees," in violation of the code, and that the City also "threatened to punish [Lathfield] by issuing citations to it for not obtaining a business license." (*Id.*, PageID.11-12).

Additionally, Lathfield contends that the City has "threatened to punish [Lathfield] for refusing to disclose confidential business information of its licensees." (*Id.*, PageID.12). Although plaintiffs acknowledge that the city has an ordinance that compels commercial landlords to disclose information about tenants, the complaint asserts that Lathfield "does not have tenants at its buildings" because its licensees are, by law, not tenants. (*Id.*). Furthermore, Lathfield urges that it has contracts with its licensees that "prohibit[] the disclosure of the names and occupations of the businesses that [Lathfield] contracts with." (*Id.*, PageID.21).

Broadly, plaintiffs assert that the defendants engaged in "a concerted effort . . . to coerce and intimidate [Lathfield] to perform upgrades and improvements to the Property that the City cannot otherwise lawfully compel." (*Id.*, PageID.16). The complaint also suggests that "the City has previously been sued by at least one prior owner over the very issues raised in this Complaint" but "took steps to conceal that lawsuit's results and whatever settlement led to its dismissal." (*Id.*, PageID.23). Specifically, plaintiffs allege that Jet Dhaliwal, the manager of the

company that sold the Property to Lathfield (Dhal Real Estate, LLC) sat on the DDA for a number of years. (*Id.*, PageID.24). According to the complaint, before the sale to Lathfield occurred, the City threatened to condemn the Property and Dhal Real Estate sued the City. (*Id.*). Plaintiffs urge that the City's lack of enforcement with regard to the Property over several years would make it inequitable for the City to now enforce zoning requirements that it has not enforced on prior owners. Finally, the complaint alleges that the City and DDA do not want the Property to remain in its current form because of an anticipated expansion of Southfield Road, their decades-long failure to regulate the Property, and "their distaste for the minority-owned businesses that exist at the Property." (*Id.*, PageID.25); *see also* (*id.*, PageID.28) (alleging that the City "no longer wants the minority-owned businesses that have been occupying the Property for decades to be the 'face' of Lathrup's commercial corridor").

The complaint includes the following causes of action:

- Count I – Action for Declaratory Relief
    - As to the City of Lathrup Village. Declare that the Property is not subject to site plan approval.
- Count II – Action for Declaratory Relief
    - As to the City of Lathrup Village. Declare that [Lathfield] has no obligation to obtain a business license.
- Count III – Due Process Violations[2]

---

[2] In 21-cv-10193 and 21-cv-10195, Count III is a claim for due process violations under the Constitution of the United States. (21-cv-10193, ECF No. 1, PageID.14-16); (21-cv-10195, ECF No. 1, PageID.14-16). In the amended complaint of 21-

- o As to the City of Lathrup Village.
- Count IV – Action for Declaratory Relief
    - o As to the City of Lathrup Village. Declare that Lathrup Village cannot prejudice the rights of third parties.
- Count V – Business Defamation
    - o As to Jim Wright and McKenna.
- Count VI – Tortious Interference with a Business Relationship
    - o As to Jim Wright and McKenna.
- Count VII – Violation of the United States and Michigan Constitutions' Contracts Clauses[3]
    - o As to Lathrup Village.
- Count VIII – Declaratory Relief
    - o As to Lathrup Village. Declare the Property a Pre-Existing, Non-Conforming Use.
- Count IX – Inverse Condemnation[4]
    - o As to Lathrup Village and the DDA
- Count X – Violation of Equal Protection[5]
    - o As to All Defendants.

---

cv-10198, Count III is a claim for due process violations under the Constitution of the State of Michigan. (21-cv-10198, ECF No. 5, PageID.128-31).

[3] In 21-cv-10193 and 21-cv-10195, Count VII is a claim for violation of the Contracts Clauses of both the United States and Michigan Constitutions. (21-cv-10193, ECF No. 1, PageID.21-22); (21-cv-10195, ECF No. 1, PageID.21-22). In the amended complaint of 21-cv-10198, Count VII is a claim for violation of the Contracts Clause of only the Michigan Constitution. (21-cv-10198, ECF No. 5, PageID.136-38).

[4] In 21-cv-10193 and 21-cv-10195, Count IX is a claim for inverse condemnation generally. (21-cv-10193, ECF No. 1, PageID.25-27); (21-cv-10195, ECF No. 1, PageID.25-27). In the amended complaint of 21-cv-10198, Count IX is a claim for inverse condemnation under Michigan's Constitutional Protections. (21-cv-10198, ECF No. 5, PageID.142-44).

[5] In 21-cv-10193 and 21-cv-10195, Count X is a claim for violation of equal protection. (21-cv-10193, ECF No. 1, PageID.27-28); (21-cv-10195, ECF No. 1, PageID.27-28). In the amended complaint of 21-cv-10198, Count X is a claim for civil conspiracy – which mirrors Count XI in the other two complaints. (21-cv-10198, ECF No. 5, PageID.144-46). That is, the amended complaint in 21-cv-10198 omits the claim for equal protection.

- Count XI – Civil Conspiracy[6]
  - As to All Defendants.

(21-cv-10193, ECF No. 1, PageID.12-29); (21-cv-10195, ECF No. 1, PageID.12-29); (21-cv-10198, ECF No. 5, PageID.125-46). Defendants have now filed motions for summary judgment.

II. Legal Standard

A moving party is entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  All of the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Id.* (cleaned up).

III. Analysis

A. *Count I: Action for Declaratory Relief (as to the City of Lathrup Village)*

Count I of plaintiffs' complaint is for declaratory relief as to the City of Lathrup Village.  (ECF No. 1, PageID.12).  Lathfield seeks a declaration that the Property is not subject to site plan approval.  (*Id.*).  The complaint urges that site

---

[6] As indicated above, the amended complaint in 21-cv-10198 omits a claim for equal protection and instead has the civil conspiracy claim as Count X.  (21-cv-10198, ECF No. 5, PageID.144-46)

plan approval is only required to obtain a certificate of occupancy or when a change of use occurs; that the Property has a current certificate of occupancy; that the City's own report acknowledges there has been no change of use at the Property; and that the City is nevertheless "seeking to compel [plaintiffs] to undergo site plan review and approval in violation of its own zoning code." (*Id.*, PageID.12-13). Plaintiffs accordingly seek "a declaration that the City cannot compel site plan review and approval of the Property under its applicable zoning code." (*Id.*, PageID.13).

The City seeks summary judgment on this claim, urging that because plaintiffs have not claimed that the ordinance as written is illegal, and because Lathfield has already "voluntarily gone through site plan review and there are[] no pending requests for any additional review," the issue is moot. (ECF No. 40, PageID.577). The City anticipates that Lathfield will argue that the issue could arise again in future but argues that at that point "it will be a fact specific inquiry as to whether the ordinance applies or not." (*Id.*, PageID.578).

In response, Lathfield clarifies that it is not "seeking a declaration that the Property will never have to go through [site plan] review and compliance." (ECF No. 45, PageID.2922). "Rather, Plaintiffs seek declaratory relief in the form of instructing the City that Plaintiffs are not required to undergo or complete Review and approval since there is presently no lawful authority under the City's Codes

and ordinances to compel this action." (*Id.*).  Plaintiffs additionally argue that in so far as the review has already been completed, "it was done under an unlawful premise" and the fact that Plaintiffs submitted to the review "does not compel this Court to further that unlawful premise by also forcing Plaintiffs to comply with the purported requirements the City imposed on Plaintiffs in the Review process." (*Id.*, PageID.2923).  Lathfield argues that "the Court is permitted to grant relief before actual injuries or loss occur."  (*Id.*, PageID.2922).  Lathfield also further explains its position that the zoning ordinance contemplates a site review only upon a change in use or structure of the property, that mere ownership change does not trigger that standard, and that the City thus has no basis to "force the Plaintiffs to seek Review and comply with the requirements stemming from it."  (*Id.*, PageID.2923-24).

In reply, the City clarifies that it does not believe site plan review is required due to the change in *ownership* of the Property, but rather due to actual changes in use including the intensity of parking, use of the buildings, and "improper use of dumpsters."  (ECF No. 49, PageID.3307).  The City also urges that "[t]here can be a change of use that does not affect the zoning classification."  (*Id.*).  The City then reiterates its contention that the issue is moot because the plaintiffs "acknowledge[] there is no present demand for a Site Plan review and a demand for one has not been contemplated."  (*Id.*, PageID.3308).

The Court agrees that the issue is moot.  Lathfield has already gone through the site plan review and has not identified any current or pending request for it to go through any additional review.  The Court further agrees that any future dispute as to a site plan review would be fact-specific, and notes that plaintiffs have specifically indicated that they are not "seeking a declaration that the Property will never have to go through [site plan] review and compliance."  (ECF No. 45, PageID.2922).  Because there is no pending or anticipated request for site plan approval, the claim is moot.  *See, e.g.*, *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 558 (6th Cir. 2021) (a claim is moot if the parties do not have a legally cognizable interest in the outcome or the issues presented are no longer live).

### B. *Count II: Action for Declaratory Relief (as to the City of Lathrup Village)*

Count II of plaintiffs' complaint is for declaratory relief as to the City of Lathrup Village.  (ECF No. 1, PageID.13).  Lathfield seeks a declaration that it has no obligation to obtain a business license.  (*Id.*).  Specifically, the complaint urges that the City's licensing ordinance applies to entities "conducting business" in the City; that "conducting business" does not include the mere ownership of

11

commercial property; and, thus, that the City has no lawful means to compel Lathfield to obtain a business license.  (*Id.*, PageID.13-14).[7]

Lathrup Village seeks summary judgment on this claim.  (ECF No. 40, PageID.578).  The City notes that "business activity" is defined broadly to include "performing a trade" and that a dictionary definition of a "trade" is to buy and sell goods and services.  (*Id.*, PageID.579).  Similarly, the City notes that "business activity" includes "enterprises" and that the dictionary defines "enterprise" as "a business or company."  (*Id.*).  In sum, "[t]he plaintiffs own real property.  They take portions of that property and give use of it to others for money.  This is trade, this is enterprise, and this is business."  (*Id.*).

Plaintiffs counter that they "are merely the owners of [the] Property and aren't conducting business as defined by the City's ordinance."  (ECF No. 45, PageID.2924).  Lathfield points out that the Supreme Court has said that "not every income-producing and profit-making endeavor constitutes a trade or business."  (*Id.*, PageID.2925) (quoting *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987)).  And here, plaintiffs say, "[t]hey do not have an office in the City and to the extent Plaintiffs operate any business, they do so through their property management company, located in Southfield."  (*Id.*).

---

[7] The complaint further alleges that the City has threatened Lathfield with closure, tickets, and other governmental action if it failed to obtain a business license by January 6, 2021.  (*Id.*, PageID.13).

In reply, Lathrup Village urges that it is undisputed that the plaintiffs own income-producing property in the City, that the plaintiffs pay individuals to show the Property to potential occupants, that the plaintiffs take money from occupants in the City, that the plaintiffs pay individuals to work on the properties in the City, that the plaintiffs pay property taxes for property owned in the City, and that the plaintiffs advertise to people in the City for the occupancy of the commercial space.  (ECF No. 49, PageID.3308-09).

Ordinance section 18-30 states that "[e]very person conducting business of a type capable of being lawfully regulated by a city licensing ordinance shall apply for and obtain . . . a general business license as provided for by this article."  (ECF No. 40-16, PageID.1645).  In section 18-26, "conducting business" is defined to include "[p]erforming a trade, which means all other kinds of vocations, occupations, enterprises, establishments and kinds of activity not included in the definition of the term 'merchant' or 'business.'"  (*Id.*).

While not every income-producing or profit-making endeavor constitutes a trade or business, the Court is hard pressed to understand how offering commercial property to potential occupants would not constitute "conducting business" in this instance.  The location of the office of plaintiffs' property management company is immaterial.  Plaintiffs are indisputably offering their property and services in the City.  Summary judgment is appropriately granted to the City on Count II.

13

C. *Count III: Due Process Violations (as to the City of Lathrup Village)*

Count III of plaintiffs' complaint is for due process violations as to the City of Lathrup Village.  (ECF No. 1, PageID.14).  Plaintiffs appear to raise two issues within this claim.   First, Lathfield alleges that the government is required to "provide appropriate notice of ordinances it intends to enforce"; that the City here "purported to enforce a number of codes regulating skilled trades, using versions from 2014 forward"; but that "[t]he City's adopting ordinance under MCL 117.3 (K) [sic] only purports to adopt the 2006 version of the Michigan versions of these trade codes."  (*Id.*, PageID.15).  Lathfield argues that the City's failure to properly adopt trade codes from 2014 forward means that they cannot use these codes for enforcement and that in doing so the City deprived plaintiffs of adequate notice in violation of due process.  (*Id.*).  Second, plaintiffs urge that "while the City sent the Inspection to [plaintiffs], it refused to honor [plaintiffs'] rights of appeal of the findings of such Inspection," also in violation of their due process rights.  (*Id.*).[8] The City seeks summary judgment on this claim.

---

[8] The complaint also identifies what could be construed as a third due process violation when it says that "[t]he City's conduct with respect to infringing on the contractual rights of [Lathfield] and its licensees is a further violation of [Lathfield's] substantive, economic due process rights."  (*Id.*, PageID.16). However, in their response to the motion seeking summary judgment on Count III, plaintiffs only address the first two issues.  *See* (ECF No. 45, PageID.2926) ("The City's conduct here violates due process where they sought to enforce ordinances not of record and deprived Plaintiffs of any administrative appellate process."). Accordingly, the Court assumes that this statement related to "substantive,

*i.  Lack of Notice*

As to the first issue, the parties agree that section 14-26 of the City's ordinance code states in part that "[t]he City of Lathrup Village shall apply and enforce the Michigan Building Code 2006 update, and all amendments thereto." (ECF No. 40-16, PageID.1643); (ECF No. 40, PageID.579-80); (ECF No. 45, PageID.2927).  Plaintiffs assert, however, that the City failed to comply with a provision of the Home Rule City Act, Mich. Comp. Laws § 117.3(k), relating to adoption by reference and publication.  (ECF No. 45, PageID.2927).  That provision states in relevant part:

> Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or other agency of this state, or by an organization or association that is organized and conducted for the purpose of developing the code, *by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full*. The law, code, or rule shall be clearly identified in the ordinance and its purpose shall be published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. *The publication shall contain a*

_____

economic due process rights" is not meant as a third, independent alleged violation.

>   *notice stating that a complete copy of the law, code, or rule is made*
>   *available to the public at the office of the city clerk* in compliance
>   with state law requiring that records of public bodies be made
>   available to the general public.

Mich. Comp. Laws § 117.3(k) (emphasis added).  Plaintiffs urge that "[t]he City's

ordinances do not contain the notice required by MCL 117.3 (k) noting that a copy

is available with the city clerk."  (ECF No. 45, PageID.2927).  In response, the

City argues that plaintiffs "have confused the issue of publishing an ordinance and

the required language of the ordinance."  (ECF No. 49, PageID.3309).  The Court

agrees.  The state statute permits a city to adopt a code by reference without

publishing the full code provided that the code is "clearly identified in the

ordinance" and that "its purpose shall be published with the adopting ordinance."

Mich. Comp. Laws § 117.3(k).  And when the adopting ordinance is published, the

law requires that the "publication shall contain a notice stating that a complete

copy of the law, code, or rule is made available to the public at the office of the

city clerk."  *Id.*  It is the publication of the ordinance, not the ordinance itself,

which must contain the notice that the code that was adopted by reference is

available to the public.[9]

Lathrup Village also urges that because ordinance section 14-26 adopts "the

Michigan Building Code 2006 update, and all amendments thereto," any

---

[9] And as the City points out, plaintiffs have not offered any evidence to suggest
that the City failed to follow proper *publication* requirements when the ordinance
was adopted.

amendments to that code are clearly encompassed by the ordinance. (ECF No. 40, PageID.580). In particular, the City notes that under Mich. Comp. Laws § 125.1504(5), rules to update the Michigan building code are to be added, amended and rescinded "not less than once every 3 years to coincide with the national code change cycle." (*Id.*). Because codes are amended at least every three years, the City argues that it reasonably chose language for the ordinance that would allow inspectors to use amended codes adopted by the State instead of passing a new ordinance every three years. (*Id.*).

Lathfield disagrees, urging that "the plain language of the ordinance contemplates 'updates and amendments' to the 2006 code, not the adoption and enforcement of codes, update[s], and amendments from subsequent years." (ECF No. 45, PageID.2927).

Both the text of the ordinance and common sense support Lathrup's position. The City adopted by reference "the Michigan Building Code 2006 update, and all amendments thereto." (ECF No. 40-16, PageID.1643). A plain reading of the ordinance suggests that the City adopted "the Michigan Building Code," as updated in 2006, and all subsequent amendments to the Michigan Building Code. Furthermore, it is not logical to require the City to pass a new ordinance each time the state adopts an update to the building code (or, for that

matter, the electrical code, the mechanical code, the plumbing code, etc.). *See* (*id.*, PageID.1643-44).

Lathfield's due process rights were not violated by the City's adoption of the Michigan Building Code by reference nor by the City's use of the Michigan Building Code as amended after 2006.

### ii. *Lack of Appellate Review*

Second, plaintiffs urge that Lathrup Village violated their due process rights by refusing to honor their "rights of appeal of the findings of [the] Inspection." (ECF No. 1, PageID.15); *see also* (ECF No. 45, PageID.2928). Plaintiffs argue that they "issued appellate demands to the City over the claims that Review was required of the Property" but that instead of hearing the appeal, "the City simply sent the appeal back and claimed that 'no violation had occurred.'" (ECF No. 45, PageID.2928) (citing (ECF No. 45-8)). Lathfield claims that "the City had no board of appeals to even hear the appeal and instead persisted in its enforcement until Plaintiff filed the present suit." (*Id.*).[10]

In response, Lathrup Village provides its interpretation of "[f]actually what occurred." (ECF No. 49, PageID.3310). The City suggests that on September 17, 2020, the plaintiffs submitted a form titled Application for Building Board of

---

[10] This assertion seems to contradict the paragraph in the complaint alleging that "[t]he City adopted a board of appeals to hear challenges arising from inspections performed under the various codes." (ECF No. 1, PageID.15).

Appeals, the second page of which is titled Application for Zoning Appeal. (*Id.*). The City notes that a letter from plaintiffs' attorney addressed to the Building Code Board of Appeals was attached to each form referring to many of the same issues raised in the present lawsuit. (*Id.*). The City's summary is consistent with the exhibit plaintiffs attached to their response to this motion for summary judgment. *See* (ECF No. 45-8). As the City points out, however, plaintiffs' exhibit does not identify any response that plaintiffs received to their request.

The City goes on to urge that it "does have a Zoning Board of Appeals (Zoning Ordinance 7.7)." (ECF No. 49, PageID.3310). Lathrup argues, however, that "plaintiffs never made any request for a zoning change or variance" and nor did they seek a building or construction permit when the appeals were initiated. (*Id.*). Lathrup states that the City did not "ever deny the plaintiff[s] any request for a zoning change or variance nor did the City at the time of these appeals refuse any request for a permit or in any way seek to prevent the plaintiffs from performing any construction on the properties." (*Id.*, PageID.3310-11). Because Lathfield did not take any affirmative steps that were denied, "there was nothing to appeal." (*Id.*, PageID.3311). Similarly, Lathrup Village urges that although Lathfield has suggested otherwise, "the City took no steps to cite, or fine the plaintiff[s] for any violation of a City zoning ordinance or a Building Code violation" and therefore "[t]here was no internal hearing or process to appeal from." (*Id.*).

19

Here, plaintiffs have failed to offer the Court evidence that they were denied a meaningful right to appeal any adverse decision.  While plaintiffs have attached, as Exhibit H to their brief, their purported "appellate demands," that document does not include any response received from the City.  *See* (ECF No. 45-8).  Accordingly, the claim fails.

Moreover, the Court did identify what appears to be the City's response attached as an exhibit to the motion for summary judgment filed by defendants Wright and McKenna.  (ECF No. 42-34, PageID.2350).  That letter, dated November 12, 2020, indicates that all of the documents submitted to the City would be returned because "[t]he building official has not issued any notice of violation or order that would be appealable against any of the above listed properties." (*Id.*).  This clearly supports the City's argument that no appeal was available because no adverse decision had been taken.  And again, the plaintiffs have offered no evidence in support of their position that they were denied a meaningful right to appeal a decision that went against them.

Accordingly, summary judgment is appropriately granted to the City on Count III.

*D. Count IV: Action for Declaratory Relief (as to the City of Lathrup Village)*

Count IV is a claim for declaratory relief as to the City of Lathrup Village. (ECF No. 1, PageID.17).  Lathfield seeks a declaration "that Lathrup Village

cannot prejudice the rights of third parties." (*Id.*). Specifically, Lathfield urges that the City has threatened that it will not issue business licenses to occupants of Lathfield's buildings when requested because the City asserts that Lathfield needs a business license but does not have one. (*Id.*). Plaintiffs urge, however, that "[t]he City's business licensing code does not condition the issuance of a business license on the action or inaction of a third party." (*Id.*). And, according to plaintiffs, "[t]he City has made various statements to [Lathfield's] licensees of this false narrative, to the detriment of [Lathfield's] business practices." (*Id.*).

Lathrup Village seeks summary judgment on this count. (ECF No. 40, PageID.580). The City raises arguments on the merits of the claim but also challenges Lathfield's standing to raise the issue. The Court agrees with the City on both fronts.

### i. *Whether the relationship is a "lease"*

The parties seem to agree that the key point of contention in this claim is whether the relationship Lathfield has with the occupants of its buildings constitutes a "lease." Lathfield argues that under section 18-33 of the City's code of ordinances, the building owner must provide "information to the City about leased business premises – which is not the case here." (ECF No. 45, PageID.2929). That is, Lathfield urges that it's "relationship with its licensees is based on a license agreement," not a lease, and that "the plain language of the

City's ordinance does not apply to licensors." (*Id.*, PageID.2929-30). Lathrup Village urges that regardless of what the plaintiffs elect to call it, the relationship is, in fact, a lease and thus subject to the ordinance. (ECF No. 40, PageID.581-82).

Although mindful that there are important distinctions between leases and licenses in different legal contexts, *see, e.g.*, *N. Canton Bd. Educ. v. AT&T*, 822 F. App'x 324, 329 (6th Cir. 2020), here the Court agrees with the City that the agreement between Lathfield and its occupants fits squarely within the definition of "leasing or renting" found *within the City's ordinance*. *See* (ECF No. 40-16, PageID.1646) (ordinance section 18-181, defining "leasing or renting" to mean "providing property to a person or entity for any period of time in exchange for monetary remuneration or other benefit"). In the sample agreement before the Court, Lathfield provides to the licensee "the right to use approximately 700 square feet" of space in exchange for $800 per calendar month. *See* (ECF No. 40-15, PageID.1629). The document is titled "License Agreement" and specifically notes that "Licensee is not a tenant and has no possessory interest in the License Area." (*Id.*). Nevertheless, because the arrangement outlined in the document clearly suggests that Lathfield will provide property to the licensee for some period of time in exchange for payment, it fits within the indicated definition of "leasing or renting" and is thus subject to the ordinance.

The City has not pointed to a particular ordinance provision indicating that if a landlord fails to obtain a business license then no business license may be granted to that landlord's tenant or occupant.  The City has, however, identified the logical steps used to reach that conclusion.  (ECF No. 40, PageID.580-81).  All businesses must be licensed.  (ECF No. 40-16, PageID.1645) (ordinance section 18-30).  If the owner of a building leases space for nonresidential use, it must file with the city clerk a list of all tenants in such building and the principal business of each tenant.  (*Id.*, PageID.1646) (ordinance section 18-33).  All rental units must be licensed in order to be occupied.  (*Id.*, PageID.1648) (ordinance section 18-184); *see also* (*id.*, PageID.1647) (ordinance section 18-183) (rental units are to "be registered with the city clerk . . . prior to any premises or part thereof being offered for occupancy, and shall not be occupied without acquiring a landlord license").   And "[i]f an entity is using the property of another for money the City will not issue a business license to them if the building owner has not provided their name to the City as required in the ordinance."  (ECF No. 40, PageID.581).

   *ii.  Standing*

Lathrup Village has also questioned plaintiffs' standing to bring this claim, challenging them "to show in any concrete form an injury they have suffered." (*Id.*, PageID.583).  The City acknowledges the "theoretical issue" that businesses might not chose to locate within the Property if they were not allowed to have a

business license but urges that "plaintiffs have not been able to show any occupants that did not do business with them because of this issue." (*Id.*).

Plaintiffs in response say that even if they cannot show that the City punished their licensees for failure to have a business license, "the record establishes that the City was refusing business licenses because of their false claim that the Property owner was required to first have a business license." (ECF No. 45, PageID.2929). Although no particular citation is offered here, elsewhere in the brief plaintiffs direct the Court's attention to the deposition testimony of Jim Wright for the proposition that the City refused to issue business licenses at the Property because the City believed that Lathfield first had to obtain a landlord license. (*Id.*, PageID.2920) (citing (ECF 45-4, PageID.3119)). In that testimony, Wright acknowledged that the City withheld business licenses for the Property because Lathfield had not obtained a license. (ECF No. 45-4, PageID.3119); *see also* (ECF No. 45, PageID.2919) (citing (ECF No. 45-2, PageID.3048)) (testimony of City witness that business licenses were not issued because the landlord lacked a license). The Court intuitively understands that prospective tenants might be wary of locating in a particular building if they believe that they will not be able to obtain a business license due to the landlord's failure to obtain one. However, plaintiffs have not provided any evidence of a prospective tenant that opted not to locate within the Property because of this issue. Nor, for that matter, have

24

plaintiffs clearly identified evidence of some other harm that *Lathfield* suffered. Accordingly, plaintiffs would appear to lack standing to raise this issue. *See, e.g.*, *Ass'n Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 537 (6th 2021) ("To establish a 'case,' a plaintiff must show that the plaintiff has suffered an injury, that the defendant's conduct likely caused the injury, and that the relief sought will likely redress the injury.") (citation omitted).

Summary judgment is appropriately granted as to Count IV because Lathfield lacks standing to raise the claim. Even if Lathfield had standing, summary judgment would be appropriate on the merits because the agreement between Lathfield and the occupants of its buildings fits within the definition of "leasing or renting" as spelled out in the City's ordinance.

E. *Count V: Business Defamation (as to Jim Wright and McKenna)*

Count V is a claim for business defamation as to defendants Jim Wright and McKenna. (ECF No. 1, PageID.18). Plaintiffs allege that outside of any duty he may have had on behalf of the City, Wright repeatedly told contractors and existing and prospective licensees that the Property was being condemned. (*Id.*). Plaintiffs note, however, that the City has never taken any action to condemn the Property. (*Id.*). Plaintiffs urge that Wright knew or should have known that there was no condemnation action against the Property and that his false statements "defamed and disparaged" Lathfield. (*Id.*). The complaint alleges that Wright

25

made the statements "negligently or with actual malice" and that they "deterred others from dealing with [Lathfield]." (*Id.*, PageID.19).  McKenna is included in this claim as Wright's employer under theories of *respondeat superior* and negligent training.  (*Id.*).

The parties appear to agree that a claim for "business defamation" has the same elements as a claim for "defamation" under Michigan law, namely:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (Mich. 2010) (citation omitted); (ECF No. 42, PageID.1674); (ECF No. 44, PageID.2484); *see also Dumas v. Hurley Med. Ctr.*, 837 F. Supp. 2d 655, 662 (E.D. Mich. 2011) ("business defamation appears to be coincident with defamation under Michigan law").

Wright and McKenna seek summary judgment on Count V.  (ECF No. 42, PageID.1674).  First, they urge that any statement made by Wright about the Property reflected his honest and subjective opinion, and that opinions cannot serve as the basis for a defamation action.  (*Id.*, PageID.1675) (citing, *inter alia*, *Hope-Jackson v. Washington*, 877 N.W.2d 736, 747 (Mich. Ct. App. 2015)).  As to this issue, the Court finds that plaintiffs have offered evidence that Wright, as the

building official, offered more than simply his opinion. *Compare* (ECF No. 44-4, PageID.2697) (affidavit that Wright "kept referencing that the building *should be* condemned") (emphasis added) *with* (*id.*, PageID.2695-96) (affidavits that Wright "mentioned that the buildings *were going to be* condemned" and that he stated "I don't know what you guys are trying to do at those buildings, they *are* condemned") (emphases added).

Second, Wright and McKenna argue that any statements made are entitled to a qualified privilege and that whether the privilege exists is a question of law for the Court to decide.  (ECF No. 42, PageID.1675).  Specifically, they point to *Prysak v. R.L. Polk Co.*, 483 N.W.2d 629 (Mich. Ct. App. 1992), in which the Michigan Court of Appeals held that "[t]he elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." *Id.* at 636.  If a qualified privilege is established, a plaintiff may overcome it "only by showing that the statement was made with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth." *Id.* However, "[g]eneral allegations of malice are insufficient to establish a genuine issue of material fact." *Id.*

Wright and McKenna urge that Wright's statements (a) reflect his honest opinion regarding health and safety matters in which he had legitimate interests as

the building official, (b) were received by contractors and occupants with a corresponding interest in the Property, (c) were made while Wright was acting within the course of his building official duties, and (d) that in any event, the belief "that the properties were condemnable was shared by the City and Plaintiffs' principal/representative Jason Curis, who used this fact to his advantage when suing the prior owner and obtaining a reduction in taxable value."[11]  (ECF No. 42, PageID.1675-76) (emphases omitted).

In response, Lathfield urges that multiple witnesses have contradicted the notion that Wright's statements were his honest opinion made in good faith and points out that City officials have denied the existence of any condemnation action. (ECF No. 44, PageID.2485).

Even assuming, for the sake of argument, that a qualified privilege exists, the Court finds that plaintiffs have identified a genuine dispute of material fact as to whether Wright made any statement with actual malice, that is: "with knowledge of its falsity or reckless disregard of the truth."  *Prysak*, 483 N.W.2d at 636. Defendants' own brief urges that Wright "was unaware of condemnation consideration," (ECF No. 42, PageID.1668), and he testified at his deposition that the Property "was not condemned," (ECF No. 42-9, PageID.2047).  If he was

---

[11] The Court notes that the nub of this issue is not that Wright (and others) believed that the Property was *condemnable*, but that Wright told contractors and licensees that the building *had been* or *would be* condemned.  There is a meaningful distinction.

unaware of any condemnation proceedings or knew that none had occurred, this would suggest that any statement he made that "the buildings were going to be condemned" or had been condemned was false or made with reckless disregard for the truth, particularly given his position as the building official.  (ECF No. 44-4, PageID.2695-96) (affidavits identifying statements allegedly made by Wright); *see also* (ECF No. 44-3, PageID.2630) (deposition testimony of plaintiff's witness that she was present during July 2020 inspections when Wright told a contractor "that the properties would be condemned").   Plaintiffs here have offered more than "[g]eneral allegations of malice," *Prysak*, 483 N.W.2d at 636, and thus summary judgment is appropriately denied with regard to Count V.[12]

F. *Count VI: Tortious Interference with a Business Relationship (as to Jim Wright and McKenna)*

Count VI is a claim for tortious interference with a business relationship, again as to Jim Wright and McKenna.  (ECF No. 1, PageID.19).  Plaintiffs allege that throughout 2020 "Wright made false statements to [Lathfield's] contractors

---

[12] In their reply brief, defendants urge that even if plaintiffs might be able to succeed on the other elements of the claim, it "remain[s] subject to summary judgment because Plaintiffs have not proven their claimed damages."  (ECF No. 46, PageID.3284).  Aside from the fact that the reply brief is not the appropriate place to make this argument for the first time, the Court observes that plaintiffs have raised a genuine dispute of material fact on this element. *See, e.g.*, (ECF No. 44-4, PageID.2695) (affidavit of contractor that Wright mentioned that the buildings were going to be condemned, which prompted the contractor to reach out to Lathfield for clarification and that the contractor "also stopped work at that time in the buildings").

and business licensees about the Property being condemned." (*Id.*).  The complaint urges that Wright knew or should have known that contractors and licensees were doing business with Lathfield "as they were expressly seeking approvals required" to work on the Property and conduct business there.  (*Id.*, PageID.20).  Lathfield argues that there was "a reasonable likelihood of future economic benefit" from this business, but that Wright "either intentionally or negligently interfered with the contracts and business relationships and expectancies" of Lathfield through his conduct.  (*Id.*).  Lathfield urges that Wright's "false statements about the Property being condemned were intended to, and did, interfere with [Lathfield's] contracts and business relationships, causing their breach, disruption, termination, or preventing them from [concluding]."  (*Id.*).  Again, McKenna is included in this claim as Wright's employer under theories of *respondeat superior* and negligent training.  (*Id.*).

Wright and McKenna seek summary judgment on Count VI.  (ECF No. 42, PageID.1672).  As a preliminary matter, the Court notes that Wright and McKenna's brief discusses tortious interference with a contract, although the name of the claim raised in the complaint is tortious interference with a business relationship.  (ECF No. 42, PageID.1672); (ECF No. 1, PageID.19); *but see* (ECF No. 1, PageID.20) (Complaint ¶¶ 133-134) (alleging that Wright "interfered with the contracts" and that Wright's statements interfered with "contracts" by "causing

30

their breach"). But "[i]n Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy." *Health Call Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 848 (Mich. Ct. App. 2005).

> The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Id.* at 849. Nevertheless, the Court will consider the arguments in so far as defendants challenge the intentionality of Wright's conduct because tortious interference with a business relationship requires a showing of "intentional interference."

Wright and McKenna urge that plaintiffs must show that Wright's actions were taken for the specific purpose of harming the plaintiffs and argue that without an improper motive, there is no liability. (ECF No. 42, PageID.1672-73). Defendants argue that mere interference is insufficient; plaintiffs must show a *per se* inherently wrongful act or specific acts "that corroborate malicious and unjustifiable acts." (*Id.*, PageID.1673). Wright and McKenna further argue that there is no "unjustified act . . . if the defendant's actions are motivated by valid business reasons and/or act to protect the welfare of third parties." (*Id.*). Here,

31

they say, Wright was performing his official duties related to health and safety and there is no evidence of any malice on the part of Wright.  (*Id.*, PageID.1673-74).

In response, Lathfield argues that tortious interference with business relations may be caused by defamatory statements.  (ECF No. 44, PageID.2481). Plaintiffs argue that here Wright acted "intentionally" when he falsely told contractors and licensees that the Property faced condemnation "because he is closely working with the City on the Property inspections, and he knew that the City had not initiated any condemnation procedure on the Property."  (*Id.*, PageID.2482).  Plaintiffs urge that "at a minimum, there are conflicting statements of witnesses showing that Mr. Wright engaged in a campaign of false information that harmed Plaintiffs."  (*Id.*, PageID.2484).

Intentionality goes to the third element of a claim for tortious interference with a business relationship: "an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy."  *Atrium*, 706 N.W.2d at 849.  The Michigan Court of Appeals has stated that "interference alone will not support a claim."  *Hope Network Rehab. Servs. v. Mich. Catastrophic Claims Ass'n*, 994 N.W.2d 873, 879 (Mich. Ct. App. 2022).

> To satisfy the third element, the plaintiff must establish that the defendant acted both intentionally and either improperly or without justification.  A tortious-interference-with-a-business-relationship claim requires an allegation of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.  If

32

the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference. Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference. Thus, if a defendant's actions were motivated by a legitimate business reason, those actions do not constitute improper motive or interference, and they cannot be wrongful per se. If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference.

*Id.* at 879-80 (cleaned up).

The Court here again agrees with plaintiffs that they have demonstrated a question of material fact as to the element of intentional interference. Wright asserts that he did not know of any condemnation proceedings and that he did not tell anyone that the building was being condemned. Lathfield asserts that Wright knew there were no condemnation proceedings yet falsely told contractors and licensees that the building was condemned. As indicated above, both sides have supported their positions. Whether Wright was purposefully untruthful goes to whether he acted "improperly or without justification." *Id.* at 879 (cleaned up). Although a jury could find that Wright was "motivated by legitimate business reasons," a jury could also find that he acted with animus and impropriety towards Lathfield because of his long-standing frustrations about the Property. *Id.* at 880.

Summary judgment is appropriately denied as to Count VI.

G. *Count VII: Violation of the United States and Michigan Constitutions'*
*Contracts Clauses (as to the City of Lathrup Village)*

Count VII is a claim for violation of the Contracts Clauses of the United
States and Michigan Constitutions as to the City of Lathrup Village.  (ECF No. 1,
PageID.21).  Lathfield urges that it has contracts with its licensees that "contain
confidentiality and non-disclosure provisions" and that these "expressly prohibit[]
the disclosure of the names and occupations of the businesses that [it] contracts
with."  (*Id.*).  Lathfield urges that the City "has demanded that [Lathfield] disclose
such information pursuant to its ordinances" but that if it did so, Lathfield "would
be in violation of its contracts with its licensees."  (*Id.*).  Lathfield argues that the
City's "ordinance is not rationally related to its police power" because the
information it seeks "it could also ascertain directly from the licensee."  (*Id.*).  In
the alternative, Lathfield urges that the ordinance relied upon by the City "does not
apply on its face where the ordinance only compels the disclosure of 'tenants.'"
(*Id.*, PageID.22).

The City seeks summary judgment on Count VII.  (ECF No. 40,
PageID.583).  Lathrup Village notes that "[t]he agreement the plaintiffs entered
into has no provision making it confidential or limiting its disclosure."  (*Id.*,
PageID.584).  More broadly, the City argues that it simply wants to know "who is
conducting business and what is the nature of their business."  (*Id.*).

34

Plaintiffs in response urge that their contracts with licensees do "contain confidentiality and non-disclosure provisions."  (ECF No. 45, PageID.2930-31) (citing ECF No. 40-15, PageID.1638).  They further argue that "the City compels such disclosure by relying on an ordinance that does not apply on its face to the Plaintiffs" and that this collectively "constitutes a substantial impairment of [their] contractual relationship[s]."  (*Id.*, PageID.2931).

The City's reply brief points to deposition testimony from a Lathfield witness that she was told of a company policy precluding disclosure but that she did not know if that policy was written down anywhere.  (ECF No. 49, PageID.3312-13).  The reply also notes that "[t]here is no such thing as a landlord tenant or licensee/licensor privilege" and reiterates the City's position that in requesting the name of the occupant and nature of its business, Lathrup Village does "nothing to substantially impair the contractual agreement."  (*Id.*, PageID.3313-14).

The Court has reviewed the citation provided by plaintiffs as to a confidentiality provision but cannot identify any clause or statement on that page that would "prohibit the Plaintiffs from disclosing their licensees' names and businesses." (ECF No. 45, PageID.2931).  (ECF No. 40-15) is the sample "license agreement" offered to the Court for review, but the page cited by plaintiffs

(PageID.1638, apparently an exhibit to the license agreement) says nothing about confidentiality.

There is, however, a "confidentiality and non-disclosure" provision on PageID.1641, which states that the licensor and licensee agree to take reasonable steps to protect from disclosure any "confidential information," including "the names of the licensees" as well as "the licensees['] business identity or business operations in the licensed space." (ECF No. 40-15, PageID.1641). As defendants point out in their reply brief, however, the agreement also includes a provision stating that Lathfield agrees to comply with all "applicable laws and regulations of all . . . municipal and local governments . . . having jurisdiction which shall impose any obligation or duty upon Licensor." (ECF No. 40-15, PageID.1630). As indicated above, the City has demonstrated that there is an ordinance provision requiring landlords to disclose the identity of commercial tenants. *See* (ECF No. 40-16, PageID.1646) (ordinance section 18-33).[13] Given both of these provisions in the license agreement, it cannot reasonably be read to require Lathfield to violate the City ordinance requiring disclosure of the identity of commercial tenants. Even if it could, a contractual provision that required violation of the law would be void as against public policy. *See, e.g.*, *Shapiro v. Steinberg*, 440

---

[13] And in so far as plaintiffs would urge that the ordinance does not apply to them because the occupants of their buildings are "licensees" rather than "tenants," the Court has already rejected that argument. *See* discussion of Count IV, *supra*.

N.W.2d 9, 11 (Mich. Ct. App. 1989) ("It is well established that the courts of this state will not enforce, either in law or in equity, a contract which violates a statute or which is contrary to public policy."). Summary judgment is appropriately granted in favor of the City on Count VII.

### H. Count VIII: Declaratory Relief (as to the City of Lathrup Village)

Count VIII is a claim for declaratory relief as to the City of Lathrup Village. (ECF No. 1, PageID.22). Specifically, plaintiffs seek to "declare the Property a pre-existing, non-conforming use." (*Id.*) (capitalization amended). That is, Lathfield urges that the Property has been used in the same fashion for more than fifteen years; that Lathrup Village "has permitted the current use of the Property, either expressly or implicitly, for as long as the Property has been in operation" by affirmatively issuing business licenses and failing to take enforcement action; and that Lathfield "relied upon" this when it bought the Property and "would not have expended significant sums to purchase the Property" if it had known of the City's intention to "reverse course." (*Id.*, PageID.22-24). Lathfield states that the City "is estopped from enforcing its zoning and site plan requirement on [Lathfield] and the Property due to their years of inaction that have been relied upon by every past owner." (*Id.*, PageID.24). Lathfield further states that the City is "barred by the equitable doctrine of laches from refuting the current status of the property." (*Id.*).

Plaintiffs also urge that the City's delay permitted the prior owner to sell the Property, and that the manager of the prior owner "sat on the Downton Development Authority for the City for a number of years." (*Id.*). Plaintiffs allege that the prior owner was threatened with condemnation but that the prior owner "sued the City for such condemnation action." (*Id.*). They say that the City's "permissive approach of the current status of the Property for decades renders it inequitable to permit the City to enforce zoning requirements on [Lathfield] that it has refused to enforce on other owners." (*Id.*, PageID.25). Accordingly, they seek "a determination that the Property is a pre-existing, non-conforming use and that no changes or modifications to the Property, parking, or trash receptacle are required." (*Id.*).

Lathrup Village seeks summary judgment on Count VIII. (ECF No. 40, PageID.585). The City identifies three legal concepts identified in Count VIII (nonconforming use, estoppel, and laches) and addresses each in turn. Plaintiffs take the same approach, and the Court will do likewise.

### i. Nonconforming use

The City argues that while a particular use might be allowed on a property despite subsequent changes to zoning laws, "the rule is related to zoning changes" and "[t]his case has nothing to do with zoning changes." (ECF No. 40, PageID.585). Rather, according to the City, this case is about the buildings failing

to meet code requirements and the ordinance stating that commercial tenants must be disclosed.  (*Id.*).

In response, Lathfield seems to urge that the nonconforming use doctrine extends beyond "zoning changes" to include all ordinances.  *See* (ECF No. 45, PageID.2932).   Plaintiffs argue that in so far as "the Property, as currently constructed and operated, doesn't comply with the City's codes and ordinances, it is permitted as a pre-existing, non-conforming use."  (*Id.*) (citing (ECF No. 40-11, PageID.1414) (Lathrup Village Zoning Ordinance, section 7.8, addressing "nonconforming uses")).

But this argument misses the point.  Lathfield has pointed to the City's *zoning* ordinance section related to prior nonconforming uses to argue that a lawful nonconforming use may continue notwithstanding a change in ownership provided there is no change in the use.  (ECF No. 45, PageID.2932-33) (citing (ECF No. 40-11, PageID.1415) (Zoning Ordinance section 7.8(7))).   The Court is persuaded by the City's argument, however, that this is not a *zoning* dispute, but rather a case related to alleged building code violations and disclosure of commercial tenants. The nonconforming use doctrine relates to the types of activities permitted on the land over time.  Here, by contrast, the City objects to how work conducted on the Property, post original construction, has allegedly failed to meet the standards in place at the time the work was completed.  As the City aptly put it: "[t]his is not a

situation where the widget factory was once allowed and now is not, this is a situation where when work is done to the buildings it is not up to code." (ECF No. 49, PageID.3315).

Summary judgment is appropriately granted to the City on this issue.

### ii. Estoppel

With regard to estoppel, the City notes that it is difficult to ascertain from the complaint "what specific estoppel theory is being put forth." (ECF No. 40, PageID.585). Pointing to Sixth Circuit caselaw as to the elements of equitable estoppel, the City notes that a party seeking to estop the government has a heavy burden and must demonstrate not only misrepresentation that was relied upon by the plaintiffs but also some affirmative misconduct. (*Id.*, PageID.585-86) (citing *Mich. Express, Inc. v. United States*, 374 F.3d 424 (6th Cir. 2004)). Because "the City and the plaintiffs had no dealings until after the properties were purchased," the City says that there could not have been any "representations, much less misrepresentations." (*Id.*, PageID.586). Moreover, the City urges that it treated the prior owner the same as it has treated the plaintiffs in requesting inspections, pointing out violations, and attempting to bring the Property into compliance with the codes. (*Id.*).

In response, plaintiffs urge that the City should be estopped from enforcing any zoning and site plan requirements "due to the years of inaction that have been

40

relied upon by each prior owner and Plaintiffs in their ownership of the Property." (ECF No. 45, PageID.2934).  Plaintiffs also point to caselaw from the Michigan Supreme Court in which, they say, the court "found a municipality was estopped from enforcing its ordinance where it delayed just 10 months in doing so and where it issued permits contrary to its position."  (*Id.*) (citing *Pittsfield Twp. v. Malcom*, 134 N.W.2d 166 (1965)).

Plaintiffs fail to rebut to the City's evidence that it has in fact been pursuing the same goals for years, including with the prior owner of the Property.  *See, e.g.*, (ECF No. 40, PageID.573).  Lathfield asserts, without citation, that Lathrup Village "sat on its hands for potentially decades while the Property was utilized as-is in the current fashion, refusing and/or neglecting to take any enforcement against it."  (ECF No. 45, PageID.2934).  This statement, without any evidence to back it up, is insufficient to overcome the City's supported assertion that it has been working for years to bring the Property into compliance.[14]

Furthermore, as the City points out in its reply brief, plaintiffs again confuse the issues of *zoning* enforcement and *building code* enforcement.  The case cited by plaintiffs relates to whether construction of a dog kennel was permissible under

---

[14] Elsewhere in their brief, plaintiffs point to deposition testimony that the City had never before required an owner of the Property to obtain site plan approval or a certificate of occupancy.  (ECF No. 45, PageID.2917-18).  The Court notes that evidence that a specific item was not previously required does not support an inference that a municipality took "no action."  To the contrary, it only supports the proposition that the municipality did not take *that* action.

a *zoning* ordinance.  *Pittsfield*, 134 N.W.2d at 167.  Here, the dispute is about whether updates made to the buildings over time have been consistent with the *building code*.

Summary judgment is appropriately granted to the City on the issue of estoppel.[15]

### iii.  Laches

As to laches, the City urges that to succeed on this argument plaintiffs must show both a lack of diligence and prejudice.  (*Id.*, PageID.586-87).  The City asserts, however, that far from a lack of diligence, "since 2017 the City continually and consistently pushed the prior owner to bring the properties into compliance." (*Id.*, PageID.587).

In response, plaintiffs concur as to the elements of laches and repeat their argument that the City has exhibited a "lack of diligence" as evidenced by "its conduct for at least the last twenty years."  (ECF No. 45, PageID.2934).

---

[15] Also in its reply brief, the City urges that plaintiffs should be judicially estopped from their present argument because they made the *opposite* argument in their state court suit against the former owners.  (ECF No. 49, PageID.3316).  Lathrup Village argues that the Michigan Court of Appeals has found, based on evidence supplied by plaintiffs, that the City made the former owner aware that the properties had permit and license issues and were not code compliant and that "plaintiffs cannot have it both ways."  (*Id.*, PageID.3316-17).  The Court finds the City's arguments on this front preliminarily persuasive but does not have the benefit of any response from plaintiffs.  Because the question of whether the City should be estopped has already been resolved as indicated above, the Court will not reach the issue of whether plaintiffs should be estopped.

Again, however, plaintiffs have offered no facts to overcome the City's evidence that it has been pursuing the same objective for several years.  Summary judgment is appropriately granted in favor of the City on the issue of laches.

I. *Count IX: Inverse Condemnation (as to the City of Lathrup Village and the DDA)*

Count IX is a claim for inverse condemnation as to the City of Lathrup Village and the DDA.  (ECF No. 1, PageID.25).  Plaintiffs allege that:

> The City and the DDA do not want the Property, in its current form, to remain for a number of reasons, including but not limited to: the anticipated expansion of Southfield Road, their distaste for the minority-owned businesses that exist at the Property, and their failures over decades to properly regulate the Property.

(*Id.*).  Lathfield alleges that the defendants have taken steps in furtherance of their "clear intention to devalue the Property to the point of non-existence."  (*Id.*). Specifically, plaintiffs urge that the City and DDA have refused to timely process and issue permits to contractors working on the property, threatened to condemn the property or require millions of dollars in upgrades, and threatened to withhold business licenses.  (*Id.*, PageID.25-26).  Plaintiffs state that this "constitutes an abuse of government power" and "has caused a substantial decline in the value of the Property."  (*Id.*, PageID.26).  According to plaintiffs, such decline is "directly related" to withholding business licenses, prospective licensees being told that the Property is subject to condemnation, and statements by Jim Wright regarding

condemnation proceedings.  (*Id.*).  The complaint suggests that this "has the effect of taking [Lathfield's] Property."  (*Id.*).  Further, the complaint alleges that this "is unique to [Lathfield] and the Property" as it is "a burden on [Lathfield] that the City does not place on other property owners (except those specific parcels directly adjoining the Property)."  (*Id.*).

The City and the DDA seek summary judgment on Count IX.  (ECF No. 40, PageID.587).  They point out that the City has neither taken the Property nor told the plaintiffs to change the use of the Property.  (*Id.*, PageID.588).  Furthermore, defendants urge that the City does not occupy the Property nor possess the rents received from the Property.  (*Id.*). They note that "[t]he widening of Southfield Road is not a project of the City and the City does not control its progress or fate." (*Id.*, PageID.588-89).  Defendants also argue that "plaintiffs have produced no documents to show a diminished value because the City wants the plaintiffs' property to be compliant with building codes."  (*Id.*, PageID.589).  Collectively, they say, "[t]his is not an inverse condemnation."  (*Id.*).[16]

In response, Lathfield urges that "[i]t is not necessary to take physical possession of the Plaintiffs' Property to show inverse condemnation."  (ECF No. 45, PageID.2935).  Plaintiffs say they "have met all the elements required to

---

[16] The City also notes that some of plaintiffs' allegations on Count IX "are duplicated in the discussion regarding Count XI and will not be repeated here." (*Id.*, PageID.587).

establish inverse condemnation" because the City's enforcement of 2014-2018 codes "is a substantial cause of the decline of the Property's value"; the City abused its power "by withholding business licenses to . . . licensees"; the City has acknowledged it will take more of the Property if Southfield Road is widened; and the use of new codes for existing buildings has "effectuated a decline in the value of the Property." (*Id.*, pageID.2935-56) (citing (ECF No. 45-9)).

Plaintiffs have pointed the Court to *Mays v. Governor of Michigan*, 954 N.W.2d 139, 148 (Mich. 2020) for guidance as to the law on inverse condemnation. (ECF No. 45, PageID.2935). The Michigan Supreme Court there explained as follows:

> The Fifth Amendment of the United States Constitution and Article 10, § 2 of Michigan's 1963 Constitution prohibit the taking of private property without just compensation. A claim of inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken . . . even though no formal exercise of the power of eminent domain has been attempted by the taking agency. Inverse condemnation can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a 'taking.'
>
> [A] plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages. Government actions directed at a plaintiff's property must have the effect of limiting the use of the property. [A]ll of the [defendants'] actions in the aggregate, as opposed to just one incident, must be analyzed to determine the extent of the taking. A plaintiff must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property. In [a 1998 case], this Court opined:

> The right to just compensation, in the context of an inverse condemnation suit for diminution in value . . . , exists only where the landowner can allege a unique or special injury, that is, an injury that is different in kind, not simply in degree, from the harm suffered by all persons similarly situated.

*Mays*, 954 N.W.2d at 148 (cleaned up).

Here the Court finds that plaintiffs have neither demonstrated that the alleged government action was "a substantial cause of the decline of the property's value" nor that they have suffered any "injury that is different in kind, not simply in degree, from the harm suffered by all persons similarly situated." *Id.* (cleaned up). Lathfield's citation to (ECF No. 45-9) does not advance plaintiffs' cause because while the document apparently reflects the reassessment of certain property values, it gives no indication as to *why* the property values have diminished. Plaintiffs have not identified anything other than mere speculation that would tie any diminution in property values to any action taken by the City or DDA. Moreover, even if plaintiffs could show a harm that was attributable to defendants, they have not provided any evidence as to how that harm would be a "unique or special injury." *Id.* (cleaned up).[17]

---

[17] The Court notes that defendants did not explicitly raise the issue of unique harm. The Court mentions the issue here given plaintiffs' citation to *Mays*, which clearly identifies this as a requirement that must be pled and proven, and plaintiffs' statement that they "have met all the elements required to establish inverse condemnation." (ECF No. 45, PageID.2936). Although it was pled, plaintiffs failed to offer any evidence in support of a unique harm. *See* (ECF No. 1,

Summary judgment is appropriately granted in favor of the City and DDA as to Count IX.

*J. Count X: Violation of Equal Protection (as to all defendants)*

Count X is a claim for violation of equal protection as to all defendants. (ECF No. 1, PageID.27).   Plaintiffs allege that Lathfield "is being harassed, coerced, intimidated, and bullied by the City."   (*Id.*).   They further assert that "[o]ther owners of commercial real property in the City are not treated in the same fashion."   (*Id.*).   In particular, plaintiffs allege that other commercial property owners "are not being threatened with condemnation," are not required "to bring their properties up to new construction building standards under the threat of condemnation," and "are not having their business tenants or licensees refused by the City for arbitrary and capricious reasons."   (*Id.*).   Lathfield alleges that the City is doing this "for a discriminatory purpose" and that even if not acting in an overtly discriminatory manner, "the City is using selective enforcement of its codes and ordinances."   (*Id.*).   Plaintiffs state that this "is designed to threaten and intimidate [Lathfield] into making repairs and improvement to the Property that the City otherwise has no mechanism to enforce."   (*Id.*, PageID.28).   Finally, plaintiffs allege that this action "is motivated by animus, ill-will, or other unlawful

PageID.26, ¶ 192).   Lathfield's failure to demonstrate causation is sufficient to grant summary judgment and independently fatal to the claim.   The Court additionally references the absence of any unique harm in the interest of completeness.

motivation" and that there "is no rational basis" for treating Lathfield differently than other similarly situated commercial property owners.  (*Id.*).

All defendants seek summary judgment on Count X.  Because plaintiffs do not seem to urge that any of their fundamental rights have been burdened nor that they are members of a suspect class, the Court assumes that the claim for equal protection rests on the allegation that the defendants "intentionally treat[ed] [Lathfield] differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005); *see also* (ECF No. 45, PageID.2936) (citing *Radavanski v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005)).

However, as the City and the DDA point out, plaintiffs have offered no evidence identifying any disparate treatment for similarly situated property owners. (ECF No. 40, PageID.589).  Lathfield in response asserts that "[p]laintiffs were treated disparately."  (ECF No. 45, PageID.2936).  In support, they state that "[d]efendants improperly inspected the Property, compelled Plaintiffs to comply with Review, and withheld business licenses."  (*Id.*).  Plaintiffs state that "[d]efendants have not applied these same restrictions to others."  (*Id.*).  They also urge that "[i]n furtherance of these actions, Mr. Wright started spreading false information regarding the condemnation of the Property."  (*Id.*, PageID.2936-37) (citing (ECF No. 44) (plaintiffs' response to Wright and McKenna's motion for

48

summary judgment)).  Plaintiffs broadly argue that the City knew how the Property was being used for more than 20 years but failed to take any enforcement action and, instead, affirmatively issued business licenses.  (*Id.*, PageID.2937).  They say that "after the Plaintiffs acquired ownership of the Property," however, "the City along with Mr. Wright and McKenna started treating Plaintiffs differently."  (*Id.*).  Plaintiffs offer no citation, however, for their bald assertion that "[n]one of the other business property owners in the city confronted a similar situation."  (*Id.*); *see also* (ECF No. 46, PageID.2491) (again stating without citation that "[n]one of the other business property owners in the City confront a similar situation").  Absent any relevant evidence on this point, plaintiffs have no claim for violation of their right to equal protection under the law.

The Court notes that defendants Wright and McKenna have additionally argued that the equal protection claim must fail as against them because plaintiffs cannot show that they were state actors.  (ECF No. 42, PageID.1676-80).  Lathfield contests that assertion, (ECF No. 45, PageID.2489-92), but the Court need not reach the issue as it has already determined that summary judgment is appropriate in favor of all defendants on Count X.

### K. Count XI: Civil Conspiracy (as to all defendants)

Finally, Count XI is a claim for civil conspiracy as to all defendants.  (ECF No. 1, PageID.28).  Plaintiffs allege that the Property is on a prominent stretch of

Southfield Road and "is predominantly occupied by minority-owned businesses."
(*Id.*). Lathfield says, however that the City "no longer wants the minority-owned
businesses that have been occupying the Property for decades to be the 'face' of
Lathrup's commercial corridor." (*Id.*). They say the defendants "desperately
desire to upgrade and improve the image of the City" but know they have no
legitimate means to compel plaintiffs to comply with their desires. (*Id.*,
PageID.28-29). Lathfield asserts that there has been a "concerted effort [among]
all Defendants to use threats, coercion, disparagement, and harassment to obtain a
goal they could not do through legal enforcement." (*Id.*, PageID.29).

Again, all defendants seek summary judgment on this claim. The City and
DDA take particular umbrage at the allegations in this count, noting that Lathrup
Village "has a female African American Mayor, a female African American City
Administrator, and a female director of the DDA." (ECF No. 40, PageID.590).
They further urge that there has been no evidence offered as to any targeting of
plaintiffs nor any indication that defendants are acting together in support of some
plan. (*Id.*, PageID.591). The City and DDA note that "[t]here is no proof of what
overt acts were committed in furtherance of the conspiracy" and point to the
absence of any "list of the ethnic and racial makeup of their occupants or the
occupants in other commercial buildings to compare." (*Id.*). Because, they say,
"[t]here has been no presentation of the underlying actionable tort," the claim fails.

(*Id.*).  Wright and McKenna also seek summary judgment on this claim, urging that "all of Plaintiffs' underlying tort claims are untenable," and thus the civil conspiracy claim must fail.  (ECF No. 42, PageID.1681).

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means."  *Swain v. Morse*, 957 N.W.2d 396, 409 (Mich. Ct. App. 2020) (citation omitted).  But "[l]iability does not arise from a civil conspiracy alone; rather, it is necessary to prove a separate, actionable tort."  *Id.* at 409 n.13 (citation and quotation marks omitted).

The Court agrees with the City and DDA that the plaintiffs have offered "no testimony, no documents, no affidavit and simply no evidence to support" their allegations.  (ECF No. 49, PageID.3319).  The City and DDA attack the lack of evidentiary support for this claim in their motion for summary judgment, but in response plaintiffs offer only one citation: to their response to the motion for summary judgment filed by Wright and McKenna.  (ECF No. 45, PageID.2938-39) (citing (ECF No. 44)).  That brief also fails to identify (with citation) a "concerted action" or collaboration here that would amount to a conspiracy.  *See* (ECF No. 44, PageID.2492-94).

Furthermore, the Court has already granted summary judgment in favor of the City and the DDA on all other claims and thus there is no longer any "separate,

51

actionable tort" remaining.  *Swain*, 957 N.W.2d at 409, n.13.  Summary judgment is separately appropriate on these grounds as to the City and the DDA.  And without the City and the DDA, there could not be any claim for civil conspiracy as to Wright and McKenna because there is no one left with whom they could have conspired (and the Court does not understand the Complaint to allege that Wright was conspiring with McKenna, but rather that McKenna is sued only in its capacity as Wright's employer).

Summary judgment is appropriately granted in favor of all defendants as to Count XI.

IV.   Conclusion

In sum, the motion for summary judgment filed by the City of Lathrup Village and the DDA is granted in its entirety.  The motion for summary judgment filed by Wright and McKenna is granted with regard to the claim for equal protection (Count X) and the claim for civil conspiracy (XI), but otherwise denied. Accordingly, it is hereby,

ORDERED that the motion for summary judgment filed by the City and the DDA (ECF No. 40) is GRANTED.  Summary judgment is granted in favor of the City and the DDA on Counts I, II, III, IV, VII, VIII, IX, X, and XI.

IT IS FURTHER ORDERED that the motion for summary judgment filed by defendants Wright and McKenna (ECF No. 42) is GRANTED IN PART AND DENIED IN PART. Specifically, summary judgment is granted in favor of Wright and McKenna on Counts X and XI but denied as to Counts V and VI.


**SO ORDERED.**

s/Bernard A. Friedman

Dated: November 9, 2023                Bernard A. Friedman
    Detroit, Michigan            Senior United States District Judge