## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LATHFIELD INVESTMENTS, LLC,
LATHFIELD HOLDINGS, LLC, and
LATHFILED PARTNERS, LLC,

        Plaintiffs,                Case No. 21-cv-10193
                                    HON. BERNARD A. FRIEDMAN

vs.

CITY OF LATHRUP VILLAGE,
LATHRUP VILLAGE DOWNTOWN
DEVELOPMENT AUTHORITY,
JIM WRIGHT, and
MCKENNA & ASSOCIATES, INC.,

        Defendants.

_____/

## OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION

This matter is before the Court on a motion for reconsideration of the Court's November 9, 2023, Opinion and Order filed by defendants Jim Wright and McKenna & Associates, Inc ("McKenna"). (ECF No. 52). Pursuant to E.D. Mich. LR 7.1(f)(1) and (h)(3), the Court shall decide the motion without a hearing and without a response from plaintiffs Lathfield Partners, LLC; Lathfield Holdings, LLC; and Lathfield Investments, LLC (collectively "Lathfield" or "plaintiffs"). For the reasons that follow, the motion for reconsideration is denied.

I.   <u>Background</u>

The factual and procedural background of this case was discussed in the Court's recent Opinion and Order, entered at (ECF No. 51), and will not be repeated here.   In that Opinion and Order, the Court granted the motion for summary judgment filed by defendants City of Lathrup Village and Lathrup Village Downtown Development Authority.   (*Id.*).   The Court granted in part and denied in part the motion for summary judgment filed by defendants Wright and McKenna.   Specifically, the Court granted summary judgment in favor of Wright and McKenna on Counts X and XI, alleging violation of equal protection and civil conspiracy, but denied summary judgment on Counts V and VI, alleging business defamation and tortious interference with a business relationship.   (*Id.*).

Wright and McKenna now seek reconsideration of the Court's order denying summary judgment on the defamation and tortious interference claims.   (ECF No. 52).   First, Wright and McKenna urge that the Court should have applied the doctrine of judicial estoppel to prevent plaintiffs from arguing that Wright falsely represented the state of plaintiffs' properties.   (*Id.*, PageID.3378-79).   Second, Wright and McKenna argue that the totality of the undisputed evidence demonstrates that plaintiffs have failed to establish the existence of present injuries causing actual economic damages.   (*Id.*, PageID.3379).

II.   Legal Standard

Under E.D. Mich. LR 7.1(h)(2), motions for reconsideration "are disfavored." Here Wright and McKenna bring the motion on the ground that "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision." E.D. Mich. LR 7.1(h)(2)(A).

III.   Analysis

A. *Judicial estoppel does not bar plaintiffs from arguing that Wright falsely represented the state of the property.*

First, Wright and McKenna argue that "the Court mistakenly failed to consider portions of the record – including testimonial admissions by Plaintiffs' representative – which conclusively establish that the representations regarding the condemnable condition of the properties were true." (ECF No. 52, PageID.3384) (emphases omitted). Moreover, Wright and McKenna urge that plaintiffs should be judicially estopped from pursuing the contrary argument now. (*Id.*, PageID.3390). Specifically, Wright and McKenna note that in a separate case by plaintiffs against the former owner of the property, Dhal Real Estate, LLC, plaintiffs successfully argued before the Michigan Court of Appeals that they were harmed by Dhal's false representation during the sale that there were no threatened condemnation proceedings against the property. (*Id.*, PageID.3387-3393).

3

The Court first repeats what it stated in a footnote in its Opinion and Order: there is a meaningful difference between a property that *has been condemned* and a property that is in a condemnable state or subject to threatened (or even pending) condemnation proceedings.  (ECF No. 51, PageID.3349, n. 11).  One of the affidavits offered by Lathfield indicates that Wright told a third party that the buildings "are condemned."  (ECF No. 44-4, PageID.2696).  In others, he allegedly stated, without any qualification reflected in the affidavits, that the buildings were "going to be condemned."  (*Id.*, PageID.2695, 2699).  Evidence has been offered that at some point after Lathfield purchased the properties Wright represented to third parties that the buildings were condemned.

In so far as Wright and McKenna urge that all parties, even plaintiffs, have recognized the condemn*able* state of the properties (and the fact that the properties were at times subject to condemnation proceedings), the Court agrees: there is ample evidence to support that proposition.  Much of it was apparently brought to the attention of the Michigan Court of Appeals.  Indeed, plaintiffs acknowledged as much in their brief in opposition to the motion for summary judgment.  (ECF No. 44, PageID.2474) ("Dahl [sic] owned the Property for many years and during his ownership the City sought to condemn the Property for its allegations of Dahl's [sic] failures to comply with zoning regulations.").  But even in their motion for reconsideration Wright and McKenna do not offer evidence that the properties

were ever declared, by the City, to be condemn*ed* after they were purchased by Lathfield.[1]

There is a genuine issue of material fact as to whether Wright, acting as the Building Official, told third parties that the properties were or would certainly be condemned and whether the properties in fact were or would certainly be condemned at the same time (in particular: after Lathfield purchased the properties). The Court declines to determine as a factual matter whether the buildings were condemned, or should have been condemned, or were threatened with condemnation proceedings at the same time that Wright allegedly stated to third parties that the buildings were condemned or would be condemned. It is for the finder of fact to determine whether that occurred. *Compare, e.g.*, (ECF No. 42-9, PageID.2047) (deposition testimony of Wright that the building had not been condemned since Lathfield took over and that he did not tell anyone that the building was condemned or was going to be condemned) *and* (ECF No. 42, PageID.1668) (brief submitted by Wright and McKenna stating that Wright "was unaware of condemnation consideration") *with* (ECF No. 42-2) (PageID.1736)

_____

[1] To the contrary, Wright and McKenna's brief suggests that although the City obtained an Order finding Dhal in violation of Building Codes and authorizing remedial action, and although "the City subsequently took steps to condemn the buildings," in fact "the condemnation proceedings were halted by the City after Dhal agreed to bring the structures up to code." (ECF No. 52, PageID.3384-85) (citations omitted).

(deposition testimony of plaintiffs' representative Jason Curis that he interpreted the inspection reports "as, in essence, condemning the buildings").

More directly: judicial estoppel might operate to stop plaintiffs from arguing that the properties had *never* been threatened with condemnation or existed in a condemnable state. Lathfield successfully argued the contrary position before the Michigan Court of Appeals in urging that Dhal Real Estate falsely represented, during the sale of the properties, that there were no threatened adverse proceedings. And there is evidence, including testimony from plaintiffs' representative, that the properties have at various times been in a deplorable, condemn*able*, state, including after they were purchased by Lathfield. But there is conflicting evidence as to whether the properties were, in fact, condemn*ed* by the City after the sale. That would not be subject to judicial estoppel, as it was not addressed by the Michigan Court of Appeals. *See* (ECF No. 47-1, PageID.3297-3301). Although the Michigan Court of Appeals acknowledged, as defendants point out, that following the sale the City "threatened to condemn the properties," there is no indication that the City followed through with that threat. (*Id.*, PageID.3297). The Court believes that this is a very narrow, but important distinction.

B. *Scant but sufficient evidence of damages precludes summary judgment.*

Second, Wright and McKenna argue that "the totality of the undisputed evidence conclusively demonstrates that Plaintiffs failed to establish present injuries causing actual economic damages." (ECF No. 52, PageID.3379) (emphases omitted). Although the Court agrees that the evidence presented generally weighs in favor of defendants, plaintiffs have offered enough to survive the summary judgment stage.

The Court's Opinion and Order noted that the issue of damages was first raised, inappropriately, in the reply brief in support of the motion for summary judgment. (ECF No. 51, PageID.3350, n.12). Defendants now contest that determination but fail to identify any earlier reference to the issue of damages. (ECF No. 52, PageID.3393) (citing to "ECF No. ***, PgID ***"). The Court has thus been given no basis upon which to reconsider the conclusion that it was first raised after plaintiffs had any opportunity to address it.

Separately, the Court agrees with defendants that plaintiffs have the burden of proving damages. In this instance, with regard to Wright and McKenna, the Court believes that plaintiffs have just barely carried that burden across the summary judgment threshold. The Court's Opinion and Order noted, as an example, an affidavit provided by a contractor that Wright indicated that the buildings were going to be condemned. (ECF No. 51, PageID.3350, n.12) (citing

(ECF No. 44-4, PageID.2695)).   According to the affidavit, this prompted the contractor to contact Lathfield for clarification and the contractor "also stopped work at that time in the buildings."   (ECF No. 44-4, PageID.2695).   Although Wright and McKenna draw the Court's attention to significant testimony undermining the value of this affidavit for plaintiffs, this "seemingly inconsistent" evidence creates the quintessential question of material fact which is appropriately put to the trier of fact.   (ECF No. 52, PageID.3396-99).   Defendants in this motion for reconsideration offer extensive evidence contradicting the notion that plaintiffs suffered any damages.   (ECF No. 52, PageID.3395-3400).   But because plaintiffs have offered some, albeit particularly weak, evidence of damages, summary judgment is inappropriate.[2]

Thus, because Wright and McKenna have failed to show that "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its

---

[2] Defendants correctly observe that in addressing Count IV, the claim for declaratory relief against the City, the Court's Opinion and Order says that "plaintiffs have not provided any evidence of a prospective tenant that opted not to locate within the Property because of this issue.   Nor, for that matter, have plaintiffs clearly identified evidence of some other harm that *Lathfield* suffered." (ECF No. 51, PageID.3345-46).   While true, this pertained to the claim against the defendant *City* related to Lathfield's relationship with its *tenants* and the *need for licenses*. (*Id.*).   By contrast, in the relevant claims at issue here against *Wright and McKenna*, plaintiffs object to communications regarding *condemnation* with not only tenants but also *contractors*. (ECF No. 1, PageID.18-21).

prior decision," E.D. Mich. LR 7.1(h)(2)(A), the motion for reconsideration must be denied.  Accordingly, it is hereby,

ORDERED that the motion for reconsideration filed by defendants Wright and McKenna, (ECF No. 52), is DENIED.

**SO ORDERED.**

                                         s/Bernard A. Friedman
Dated: December 20, 2023                  BERNARD A. FRIEDMAN
        Detroit, Michigan                SENIOR U.S. DISTRICT JUDGE

9